UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MATILDE STEPHENSON, | § | |
| INDIVIDUALLY AND AS | § | |
| INDEPENDENT EXECUTRIX OF | § | Cv. No. SA:12-CV-01081-DAE |
| THE ESTATE OF ROBERT W. | § | |
| STEPHENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| STANDARD INSURANCE | § | |
| COMPANY; FINANCIAL | § | |
| SOLUTIONS ASSOCIATION, INC., | § | |
| AKA FINANCIAL SOLUTIONS | § | |
| ASSOCIATIONS, INC; | § | |
| INSTITUTION SOLUTIONS I LLC | § | |
| AKA INSTITUTION SOLUTIONS | § | |
| LLC AKA INSTITUTION | § | |
| SOLUTIONS; AND SAN ANTONIO | § | |
| FEDERAL CREDIT UNION AKA | § | |
| SAN ANTONIO CREDIT UNION | § | |
| DBA SACU, | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) DENYING PLAINTIFF'S MOTION TO REMAND; (2)
GRANTING DEFENDANTS' MOTIONS TO DISMISS; (3) GRANTING
PLAINTIFF LEAVE TO AMEND CERTAIN CLAIMS

On May 31, 2013, the Court heard oral argument on the Motion to

Remand to State Court filed by Plaintiff Matilde Stephenson (doc. # 14), the

Motion to Dismiss filed by Defendant San Antonio Federal Credit Union

(doc. # 7), and the Motion to Dismiss filed by Defendants Financial Solutions

Associations, Inc., and Institution Solutions I LLC (doc. # 8).  Luke Beshara and

Randall Pulman, Esqs., appeared on behalf of Plaintiff.  Keith Verges, Esq.,

appeared on behalf of Defendant Standard Insurance Company; Larry Parks, Esq.,

appeared on behalf of Defendants Financial Solutions Associations, Inc., and

Institution Solutions I LLC; and Leslie Sachanowicz, Esq., appeared on behalf of

Defendant San Antonio Credit Union.  After careful consideration of the

memoranda in support of and in opposition to the Motions, and in light of the

parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES**

Plaintiff's Motion to Remand (doc. # 14); **GRANTS** Defendants' Motions to

Dismiss (docs. ## 7, 8); and **GRANTS** Plaintiff leave to amend certain claims.

BACKGROUND

I.      Mr. Stephenson's Coverage and Death

Defendant Financial Solutions Associations, Inc. ("FSA") is a

Missouri nonprofit corporation that is an association of financial institutions.

(Doc. # 1-4 ("Petition") ¶ 4; doc. # 8 at 2.)  FSA's principal place of business is in

Richardson, Texas.  (Petition ¶ 4.)  Defendant San Antonio Credit Union

("SACU") is a member of FSA.  (Id. ¶¶ 5, 9; doc. # 8 at 2; doc. # 1 Ex. 1.)

Defendant Standard Insurance Company ("Standard") is an Oregon

corporation with its principal place of business in Oregon.  (Petition ¶ 3.)  Standard

issued to FSA, as policyholder, a group Accidental Death & Dismemberment

2

policy (the "Policy"), which included several sub-policies.  (Petition ¶¶ 10–13.)

Defendant Institution Solutions I, LLC ("ISI"), a Texas limited liability company,

is the broker that sold and administered the Policy.  (Petition ¶¶ 9–10; doc. # 1 Ex.

3 ¶ 2.)  As a member of FSA, SACU was able to provide coverage under the Policy

to eligible depositors.  (Id. Ex. A; id. Ex. B at 4, 21.)

On the other hand, Robert W. Stephenson, an account holder of SACU, was insured

under the Policy that Standard issued to FSA.  (Petition ¶¶ 9–13.)  Plaintiff Matilde

Stephenson is the widow of Robert W. Stephenson.  (Id. ¶¶ 14–15.)  Plaintiff

alleges that Mr. Stephenson always paid his premiums on time and in full and that

he enjoyed at least $117,500.00 in coverage at the time of his death.  (Id. ¶¶ 12,

13.)

On January 9, 2010, Mr. Stephenson was injured as a result of an

accident in his home, and he passed away on February 1, 2010.  (Id. ¶ 14.)

According to Bexar County Medical Examiner Elizabeth A. Peacock, the

immediate and sole cause of death was craniocerebral trauma with subdural

hematoma, which resulted from the accident.  (Id.)  Following Mr. Stephenson's

death, Plaintiff made a claim to Standard under the Policy.  (Id. ¶¶ 14–15.)

However, Plaintiff's claim was denied.  (Id. ¶ 15.)

II.   <u>Plaintiff Brings Suit</u>

On October 12, 2012, Plaintiff, Individually and as Independent Executrix of the Estate of Robert W. Stephenson, filed her original Petition in the 407th Judicial District Court of Bexar County, Texas, Cause No. 2012-CI-16759. (Doc. # 1-4.)  Plaintiff brought three causes of action against Standard and FSA based on the denial of her insurance claim: (1) breach of contract; (2) breach of the duty of good faith and fair dealing (which she also brings against ISI as Standard and FSA's agent); and (3) violations of the Texas Prompt Payment Statute, Tex. Ins. Code. §§ 542.051 <u>et seq.</u>  (Petition ¶¶ 19–21, 29.)  Plaintiff also sued all Defendants (Standard, FSA, SACU, and ISI) for violations of § 101.201 of the Texas Insurance Code based on the theory that FSA is an "unauthorized insurer" of the Policy rather than the policyholder.  (<u>Id.</u> ¶ 31.)  Finally, Plaintiff purported to bring claims against all Defendants on behalf of a class of "Texas residents who purchased or were beneficiaries under an insurance policy for which FSA served as the policyholder" (the "Class").  (<u>Id.</u> ¶ 34.)  On behalf of the Class, Plaintiff sought "to rescind the insurance policies and obtain a refund of premiums paid." (<u>Id.</u> ¶ 36.)

On November 15, 2012, Standard removed the case to federal court based on (1) minimal diversity under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"); and (2) complete diversity jurisdiction under 28

U.S.C. § 1132(a), arguing that FSA, SACU, and ISI (the "Association Defendants") were improperly joined.  (Doc. # 1.)

On November 20, 2012, Standard and SACU filed Motions to Dismiss.  (Docs. ## 6, 7.)  On the following day, FSA and ISI filed a joint Motion to Dismiss.  (Doc. # 8.)  On November 29, 2012, the parties jointly moved for a briefing schedule that would not require the Plaintiff to respond to Standard's Motion to Dismiss until fourteen days after the Court ruled on the Motion to Remand that Plaintiff intended to file.  (Doc. # 11.)  On December 5, 2012, the Court granted that Motion.  (Doc. # 12.)  Accordingly, currently before the Court are the Motion to Remand that Plaintiff filed on December 17, 2012 (doc. # 14) and the Motions to Dismiss filed by SACU, FSA, and ISI (docs. ## 7, 8).

## STANDARDS OF REVIEW

### I.    Motion to Remand to State Court

A defendant may remove a case from state to federal court if the case could have been filed in federal court originally.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).  A removing defendant bears the burden of establishing by a preponderance of the evidence that the federal court has subject-matter jurisdiction.  De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).  The removal statutes are to be construed "strictly against removal and for remand."  Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir.

1996); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)

(acknowledging "the Congressional purpose to restrict the jurisdiction of the

federal courts on removal" and the need for "strict construction of such

legislation").  A district court must remand a case if, at any time before final

judgment, it appears the court lacks subject-matter jurisdiction.  See 28 U.S.C.

§ 1447(c); Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 571 (2004); In

re 1994 Exxon Chem. Fire, 558 F.3d 378, 392 (5th Cir. 2009).

II.     Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  Review

is limited to the contents of the complaint and matters properly subject to judicial

notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322

(2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court

accepts 'all well-pleaded facts as true, viewing them in the light most favorable to

the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir.

2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d

464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for

relief, however, a plaintiff must do more than recite the formulaic elements of a

cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions,"

and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).

Thus, although all reasonable inferences will be resolved in favor of the plaintiff,

the plaintiff must plead "specific facts, not mere conclusory allegations."

Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also

Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as

true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency

should be "exposed at the point of minimum expenditure of time and money by the

parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the

plaintiff should generally be given at least one chance to amend the complaint

under Rule 15(a) before dismissing the action with prejudice.  Great Plains Trust

Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

I.    Plaintiff's Motion to Remand

Plaintiff argues in her Motion to Remand that this Court does not have jurisdiction over the instant case "because there is not complete diversity among the parties." (Doc. # 14 ¶ 1.) While Plaintiff's Motion neglected to address Standard's second basis for removal—that the action is a class action under 28 U.S.C. § 1332(d)—she also argues in her Reply that "[t]his lawsuit was not filed as a class action" and that "[t]here is no competent evidence that the amount in controversy exceeds $5 million." (Doc. # 22 ¶ 18.) Accordingly, insists Plaintiff, this Court does not have federal jurisdiction pursuant to the Class Action Fairness Act. For the reasons that follow, however, the Court concludes that federal jurisdiction is proper under the Class Action Fairness Act.

A. The Class Action Fairness Act

The Class Action Fairness Act ("CAFA") grants federal district courts jurisdiction over cases bringing state-law claims where (1) there is minimal diversity between the parties, (2) the amount in controversy exceeds the sum or value of $5 million, (3) the number of persons in the purported class exceeds 100, and (4) all primary defendants are not states or government entities. See Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 569 (5th Cir. 2011) (citing 28 U.S.C. § 1332(d)(2), (d)(5)). Standard asserted in its Notice of Removal that this Court

had jurisdiction under CAFA because all four of these prongs were satisfied, and the Court agrees.

### 1.  Minimal Diversity

First, it is undisputed that Plaintiff is a citizen of Texas and that Standard is a citizen of Oregon.  (Petition ¶¶ 2–3.)  As such, there is "minimal" diversity of citizenship, because a member of the class of plaintiffs is a citizen of a State different from a defendant.  See 28 U.S.C. § 1332(d)(2)(A).

### 2.  Amount in Controversy

Second, Standard has provided sufficient evidence for the Court to conclude that the amount in controversy at the time of removal exceeded $5 million.  Where, as here, the state-court petition does not allege a certain quantity of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount."  Berniard v. Dow Chem. Co., 481 F. App'x 859, 862 (5th Cir. 2010) (citing De Aguilar v. Boeing Co., 47 F.3d 1404, 1411–12 (5th Cir. 1995)).  The burden then switches to Plaintiff to present evidence that, to a "legal certainty," the total class claim falls below the $5 million jurisdictional amount.  De Aguilar, 47 F.3d at 1412; Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1246–47 (10th Cir. 2012).  The Legislature intended that the amount in controversy requirement "be interpreted expansively, and its provisions read broadly, with a

strong preference for federal jurisdiction."  <u>Rasberry v. Capitol County Mut. Fire Ins. Co.</u>, 609 F. Supp. 2d 594, 601 (E.D. Tex. 2009) (citing S. Rep. No. 109-14, at 42–43 (2005)).  "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should <u>err in favor of exercising jurisdiction</u> over the case."  S. Rep. No. 109-14, at 42 (2005) (emphasis added).

Plaintiff's state-court Petition defined the potential class members as all "Texas residents who purchased or were beneficiaries under an insurance policy for which FSA served as the policyholder."  (Petition ¶ 34.)  The Petition states no time limit and does not limit the class to any particular policy that FSA held.  (<u>Id.</u>)  Plaintiff stated that she "believes Class Members number in the tens to hundreds of thousands," all of whom Plaintiff alleges may be entitled to a rescission of their insurance contracts and the return of their insurance premiums.  (<u>Id.</u> ¶ 35.)

Standard attached to its Notice of Removal the affidavit of William Ferguson ("Ferguson Affidavit"), in which Ferguson—Vice President of Defendant ISI—swears that he "personally deal[s] with the administration and calculation of premiums for AD&D coverage under the Master Group Policy No. 641797" and that he "therefore [has] personal knowledge" of the fact that, "[b]eginning with the effective date of the Policy, total premiums paid for AD&D coverage issued to Texas residents under the Policy, for which FSA served as the

policyholder, <u>exceed $5 million</u>."   (Ferguson Affidavit ¶ 2 (emphasis added).)   In other words, Mr. Ferguson affirms that the premiums paid to Standard in order to provide AD&D coverage under the Policy—the premiums that the state-court Petition seeks to recover upon rescission of the insurance contracts—exceed the jurisdictional threshold of $5 million.

Plaintiff insists that "Mr. Ferguson's affidavit is not competent evidence because it is conclusory and hearsay . . . ."  (Doc. # 22 ¶ 21.)  The Court disagrees.  The Fifth Circuit addressed and accepted this type of evidence in <u>Diamond Offshore Company v. A & B Builders, Inc.</u>, 302 F.3d 531, 544 n.13 (5th Cir. 2002).  In <u>Diamond</u>, the nonmovant challenged the sufficiency of an affidavit used in support of summary judgment, arguing that the affidavit was not based on personal knowledge and that the factual statements included in the affidavit were hearsay.  The Court of Appeals found that the district court did not abuse its discretion when considering the information contained in the affidavit because the declarant's personal knowledge could be reasonably inferred from his position and the nature of his participation in the matters discussed in the declaration.  <u>Id.</u>; <u>see also</u> <u>DIRECTV, Inc. v. Budden</u>, 420 F.3d 521, 530 (5th Cir. 2005) ("Here, it is reasonably within [declarant's] position—what one court has called his 'sphere of responsibility'—as a Senior Director of Signal Integrity for DTV to be familiar with the Mountain Electronics investigation as described in his affidavit.  We

decline to find [declarant's] affidavit deficient for lack of personal knowledge, as it is reasonably inferred."); Adonai Comm'ns, Ltd. v. Awstin Invs., LLC, No. 3:10-CV-2642-L, 2011 WL 4712246, at *2 (N.D. Tex. Oct. 7, 2011) (finding that the accountant, secretary, treasurer and agent for a plaintiff had personal knowledge based on his position).  Mr. Ferguson has sworn that he is the Vice President of ISI, the organization that both sold the Policy to FSA and administers it; that he "personally deal[s] with the administration and calculation of premiums" for the Policy at issue in this case; and that those premiums have exceeded $5 million.  (Ferguson Affidavit ¶¶ 1–2.)  That Mr. Ferguson would have personal knowledge of the premiums paid for the Policy is reasonably inferred from his position as Vice President of ISI, which both sold and administers the Policy. Accordingly, Mr. Ferguson's sworn statements are sufficient to establish by a preponderance of the evidence that the amount in controversy at the time of removal exceeded $5 million.

Plaintiff further insists that Mr. Ferguson's affidavit is insufficient to establish the amount in controversy because the affidavit refers to the amount of premiums collected "[b]eginning with the effective date of the Policy . . . ." (Ferguson Affidavit ¶ 2).  (Doc. # 22 ¶ 28.)  Since "the statute of limitations generally allows recovery only of premiums paid in the four-year period prior to the filing of the lawsuit, and thereafter," insists Plaintiff, Mr. Ferguson's statement,

which refers to a longer period of time, "cannot establish the amount in controversy exceeds $5 million . . . ." (Id.)

Plaintiff's argument misses the mark: The Court may not consider defenses such as statutes of limitations in determining the amount in controversy. See Seafoam, Inc. v. Barrier Sys., Inc., 830 F.2d 62, 66 (5th Cir. 1987) (holding that the district court erred in dismissing plaintiff's suit "because of lack of the requisite amount in controversy" since "[s]ubsequent events such as a bar by a statute of limitations raised as a defense will not serve to deprive the court of jurisdiction"); Johns–Manville Sales Corp. v. Mitchell Enterprises, Inc., 417 F.2d 129, 131 (5th Cir. 1969) (explaining that statute of limitations defense, even if apparent upon the face of the complaint, does not operate to deprive the federal court of jurisdiction based on amount in controversy); McPeters v. LexisNexis, No. H-11-2056, 2011 WL 2434088, at *2 (W.D. Tex. June 10, 2011) (same). Accordingly, the Ferguson Affidavit, sworn to by an affiant with personal knowledge of the premiums paid for AD&D coverage under the Policy for which FSA served as the policyholder, is sufficient to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million. See McPeters, 2011 WL 2434088, at *2 (finding that affidavit stating that "total amount of fees paid by litigants using the File and Serve system for filings in Montgomery

County, Texas and Jefferson County, Texas since 2002 likely exceeds $7,000,000"

was sufficient to show amount in controversy).

Because Standard has demonstrated by a preponderance of the

evidence that the amount in controversy exceeded $5 million, the burden switches

to Plaintiff to prove to a "legal certainty" that the amount in controversy is less

than that.  In order to show that it is certain that damages will not exceed $5

million, a plaintiff generally must file a binding stipulation or affidavit limiting

damages or otherwise show that there is no possibility of recovering in excess of

the minimum jurisdictional amount.  As the Fifth Circuit explained in De Aguilar:

> Plaintiff's "legal certainty" obligation might be met in various ways; we can
> only speculate, without intimating how we might rule in such case.
> Plaintiff's state complaint might cite, for example, to a state law that
> prohibits recovery of damages that exceed those requested in the ad damnum
> clause and that prohibits the initial ad damnum to be increased by
> amendment.  Absent such a statute, "[l]itigants who want to prevent removal
> must file a binding stipulation or affidavit with their complaints; once a
> defendant has removed the case, . . . later filings [are] irrelevant."

See De Aguilar, 47 F.3d at 1412 (quoting In re Shell Oil Co., 970 F.2d 355, 356

(7th Cir. 1992) (per curiam)) (emphasis added); Roberts v. Allstate Ins. Co., 2006

WL 2726766 (E.D. La. 2006) (holding that plaintiff's post-removal stipulation that

amount of damages sought was less than $75,000 did not affirmatively waive

plaintiff's right to collect damages in greater amount and was thus insufficient to

establish lack of jurisdiction).  However, Plaintiff offered no such contrary proof in

her state-court Petition; and now she merely speculates that, because different

14

policies were involved and because different premium amounts were payable on different policies at different periods of time, the numbers cannot possibly add up to $5 million.  (<u>See</u> doc. # 22 ¶¶ 26–28.)   Because Plaintiff has not met her burden of showing <u>to a legal certainty</u> that the amount in controversy is less than $5 million, Standard has satisfied this prong for CAFA removal jurisdiction.

### 3.   <u>Number of Persons in Purported Class</u>

The third requirement for federal jurisdiction under CAFA is that the number of members of all proposed plaintiff classes be more than 100.  28 U.S.C. § 1332(d)(5).  Plaintiff alleges in her Petition that the proposed class members "number in the tens to hundreds of thousands" and that the members are so numerous that joinder would be impracticable.  (Petition ¶ 35.)  Therefore, this requirement is satisfied.

### 4.   <u>All Primary Defendants Are Not States or Government Entities</u>

There is no dispute that none of the Defendants are States, State officials, or government entities.  <u>See</u> 28 U.S.C. § 1332(d)(5)(A).  Accordingly, the fourth and final prong for CAFA jurisdiction is satisfied, and Defendants have made a prima facie showing that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

5.  <u>The Local Controversy Exception Does Not Apply</u>

While Defendants have made a prima facie showing that the Court has jurisdiction pursuant to CAFA, Plaintiff insists that this suit is nevertheless "subject to mandatory remand pursuant to 28 U.S.C. § 1332(d)(4)"—the "local controversy" exception.  (Doc. # 22 ¶ 29.)  Under § 1332(d)(4), a federal court does not have jurisdiction over a case that meets the other CAFA requirements if (1) greater than two-thirds of the members of the proposed plaintiff class in the aggregate are citizens of the state in which the action was filed; <u>and</u> (2) a defendant that is a citizen of the state in which the action was filed is one (a) "from whom significant relief is sought by members of the plaintiff class," <u>and</u> (b) "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class"; <u>and</u> (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A).  Plaintiff bears the burden of proof by preponderance of the evidence on each of these elements.  <u>See</u> <u>Preston v. Tenet Healthsystem Mem. Med. Ctr.</u>, 485 F.3d 793, 797 (5th Cir. 2007); <u>see also</u> S. Rep. No. 109-14, at 43–44 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41 ("If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not

satisfied.")).  The Fifth Circuit has advised that this exception is "narrow," applied "with all doubts resolved in favor of exercising jurisdiction over the case." Opelousa Gen. Hosp. Auth. v. Fair Pay Solutions, Inc., 655 F.3d 358, 360 (5th Cir. 2011); see also Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 570 (5th Cir. 2011) ("Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others.") (quoting Preston, 485 F.3d at 823).

Plaintiff insists that the local controversy exception applies here because the proposed class is limited to Texas citizens; because the Association Defendants are Texas citizens; and because Plaintiff seeks "the same relief from either Standard and FSA, jointly and severally, or all four defendants, jointly and severally," meaning that "the relief Plaintiffs seek from Standard is just as significant as the relief Plaintiffs seek from the three non-diverse defendants." (Doc. # 22 ¶¶ 29–30.)  Assuming for present purposes that Plaintiff has met her burden with regard to the other requirements, the Court turns to whether any of the Association Defendants qualify as "significant" defendants under 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) and (bb).

CAFA does not specifically define "significant" as the term is used in § 1332(d)(4)(A)(i)(II)(aa) and (bb).  However, the courts that have interpreted the

term have held that "whether a class seeks 'significant relief' against a defendant is determined by whether the relief sought against that defendant is significant relative to the relief sought against the other codefendants." <u>Caruso v. Allstate Ins. Co.</u>, 469 F. Supp. 2d 364, 368 (E.D. La. 2007) (citing <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1167 (11th Cir. 2006)).  Similarly, courts look to a defendant's alleged role in the actionable conduct to determine whether that defendant's conduct forms a "significant basis" for plaintiffs' claims.  <u>See Caruso</u>, 469 F. Supp. 2d at 369.  Logic dictates that if a plaintiff has not stated a claim against a certain defendant, that defendant cannot be liable for "significant relief" and cannot be considered a "significant" defendant.  <u>Cf.</u> <u>Gatti v. State of Louisiana</u>, C.A. No. 10-329, 2011 WL 1827437, at *6 (M.D. La. Feb. 25, 2011) (noting, in the context of "primary" defendants, that it seems illogical to consider "primary" those defendants against whom the plaintiff's claims are "weak or unlikely to prevail in federal court as pled").

        In the instant case, the "Class Allegations" beginning in paragraph 34 of the state-court Petition are so vague that it is difficult to tell precisely which claims Plaintiff wishes to bring on behalf of the purported class.  Plaintiff states only that the questions common to the class are:

> (1) whether FSA is an eligible group policyholder; (2) whether FSA has acted as an unauthorized insurer; (3) whether ISI has acted as an unauthorized insurance agent without proper appointment; (4) whether Class Members are entitled to rescind the insurance policies and obtain a refund of

premiums paid; (5) which persons assisted directly or indirectly in the procurement [the policies]; (6) whether Standard, FSA, and ISI are jointly and severally liable under the insurance policies under Tex. Ins. Code § 101.201; and (7) whether the issuance of the insurance policies violate[s] the Texas Insurance Code and Texas Deceptive Trade Practices Act.

(Petition ¶ 36.)   Even assuming that Plaintiff wishes to bring all the claims in the

Petition on behalf of the purported class, however, Plaintiff has failed to state a

claim against any of the Association Defendants and has thus failed to demonstrate

that any of the Association Defendants qualify as "significant" defendants.

### a.  <u>Breach of Contract</u>

Plaintiff's first claim is for breach of contract.  (Petition ¶ 19.)  She

brings this cause of action against Standard and FSA only, alleging that "[t]he

policies are valid, enforceable contracts between Mr. Stephenson and Mrs.

Stephenson, on one hand, and Standard and/or FSA, on the other hand."  (<u>Id.</u>)

Plaintiff claims that "Standard and/or FSA breached the contracts by failing to pay

Mrs. Stephenson benefits due to her on account of the death of Mr. Stephenson."

(<u>Id.</u>)  Plaintiff seeks, in the alternative, two forms of relief: (1) "judgment against

Standard and FSA, jointly and severally, for actual damages, consequential

damages, pre- and post-judgment interest, attorneys' fees, and costs"; or (2)

rescission of the policies and the return of all premiums.  (<u>Id.</u> ¶ 20.)

Under Texas law, the elements of a breach-of-contract action are: (1)

the existence of a valid contract; (2) performance or tendered performance by the

plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  Smith Int'l., Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007).

Whether Plaintiff has stated a claim against Standard is not currently before the Court.  However, explaining why Plaintiff does appear to state a claim against Standard helps illustrate why she fails to state one against FSA.  Plaintiff has alleged (1) that she and Mr. Stephenson entered into a valid contract with Standard when they signed up for AD&D coverage under the Policy (Petition ¶¶ 11–12); (2) that Mr. Stephenson always paid all the premiums that he owed under those policies (id. ¶ 13); (3) that Standard wrongfully refused to pay benefits even though the circumstances of Mr. Stephenson's death should have entitled Plaintiff to benefits under the policies (id. ¶ 15); and (4) that Plaintiff sustained damages when she was refused the insurance benefits (id. ¶ 19).

By contrast, Plaintiff fails to state a claim against FSA, because she pleaded no facts to suggest that FSA had contractual obligations to her or to Mr. Stephenson.  Plaintiff insists that FSA "breached the contracts by failing to pay Mrs. Stephenson benefits due to her on account of the death of Mr. Stephenson" (id.), but the Petition is devoid of any factual support for the proposition that FSA, as the policyholder, was in any way responsible for paying policy benefits, for investigating the claim, or for denying the claim.  Again, the facts pleaded suggest

that Standard alone had those responsibilities.  As Standard explains, as the

Policies themselves (which are attached as Exhibits A and B to the state-court

Petition) make clear, and as Plaintiff does not seem to dispute in her Response to

the Motions to Dismiss:

> Standard issued the Policy.  (Petition Exs. A, B.)  FSA is the policyholder
> and has no obligation to pay any insurance benefits.  FSA . . . has no
> authority to undertake and direction or control of Policy benefits.  FSA
> merely collects premium contributions from its members and, to the extent
> the premiums are not timely paid, is liable for all Policy premiums during
> the Grace Period.

(Doc. # 1 at 14 (citing Petition Ex. B at 16).)  FSA submitted Plaintiff's claim to

Standard on Plaintiff's behalf (doc. # 1 Ex. 3 ¶ 4), but Plaintiff has pleaded no facts

to suggest that FSA participated in the investigation of or decision on Plaintiff's

claim.  In the absence of any allegations that, if true, would give rise to a

contractual obligation between Plaintiff and FSA, FSA cannot be liable for breach

of contract.  See Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir. 1999)

(finding no basis for plaintiff's claim alleging that defendant "breached the

insurance contract" where defendant "had no claims processing responsibility and

no decision-making authority with respect to the processing of [plaintiff's] claim or

with [the insurer's] ultimate denial of [plaintiff's] claim").  Accordingly, Plaintiff

has failed to state a breach-of-contract claim against FSA.

b.  <u>Breach of Duty of Good Faith and Fair Dealing</u>

Plaintiff's second claim, brought against Standard, FSA, and ISI, is one for breach of the duty of good faith and fair dealing.  (Petition ¶ 21.)  Plaintiff alleges that "[a]s insurers, Standard and FSA owed Mr. Stephenson and Mrs. Stephenson a duty of good faith and fair dealing," which they "and their agent ISI" breached "by first delaying and then ultimately denying payment to Mrs. Stephenson when liability was reasonably clear."  (<u>Id.</u>)  Plaintiff insists that "[s]aid breaches were fraudulent, malicious, and/or grossly negligent."  (<u>Id.</u>)

An insurer's liability under an insurance contract is separate and distinct from its liability for breach of the duty of good faith and fair dealing.  <u>See Lyons v. Millers Cas. Ins. Co. of Texas</u>, 866 S.W.2d 597, 600 (Tex. 1993); <u>Viles</u>, 788 S.W.2d at 567.  The key inquiry in a bad-faith claim is the reasonableness of the insurer's conduct.  <u>See Universe Life Ins. Co. v. Giles</u>, 950 S.W.2d 48, 49 (Tex. 1997); <u>Trans. Ins. Co. v. Moriel</u>, 879 S.W.2d 10, 17–18 (Tex. 1994); <u>Lyons v. Millers Cas. Ins. Co. of Tex.</u>, 866 S.W.2d 597, 601 (Tex. 1993).  "A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim."  <u>Higginbotham v. State Farm Mut. Auto. Ins. Co.</u>, 103 F.3d 456, 459 (5th Cir. 1997); <u>accord</u> <u>Provident Am. Ins. Co. v. Castaneda</u>, 988 S.W.2d 189, 193 (Tex. 1998).  "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to

be erroneous, the insurer is not liable for the tort of bad faith." Higginbotham, 103

F.3d at 459 (citing Lyons, 866 S.W.2d at 600); accord Castaneda, 988 S.W.2d at

193.  Conversely, "an insurer breaches its duty of good faith and fair dealing by

denying a claim when the insurer's liability has become reasonably clear."  State

Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998).

         While Plaintiff may state a claim against Standard (again, that

question is not currently before the Court), her claims against FSA and ISI, the

non-diverse defendants, fail.  "[I]n an insurance context, the duty of good faith and

fair dealing arises only when there is a contract giving rise to a 'special

relationship.'"  Natividad v. Alexsis, Inc., 875 S.W.2d 695, 698 (Tex. 1994); see

also Cavallini, 44 F.3d at 262 (noting that, under Texas law, "the existence of a

contract, giving rise to a special relationship, is a necessary element of the duty of

good faith and fair dealing") (internal quotations omitted); Viles v. Security Nat'l

Ins. Co., 788 S.W.2d 566 (Tex. 1990) (explaining that the duty of good faith and

fair dealing arises "from an obligation imposed in law as a result of a special

relationship between the parties governed or created by a contract") (internal

quotations omitted).  Plaintiff, however, has not pleaded any facts to suggest that

she or Mr. Stephenson had the required "special relationship" with either FSA or

ISI.

Plaintiff asserts that ISI is liable as Standard and FSA's "agent" (Petition ¶ 21), but this claim fails as a matter of law:

> The Texas Supreme Court recently made it clear that "[t]here is no need to extend the duty of good faith and fair dealing owed by insurance carriers to their insureds to include agents or contractors of the insurance carrier." Natividad v. Alexis, 875 S.W.2d 695, 700 (Tex. 1994). Agents are not parties to the insurance contract, and there is no special relationship between the insured and the agent giving rise to a duty of good faith and fair dealing. Id. at 724. Insurance carriers have a non-delegable duty to the insured and remain liable for actions of their agents or contractors that breach the duty of good faith and fair dealing. Id.

French v. State Farm Ins. Co., 156 F.R.D. 159, 162–63 (S.D. Tex. 1994); see also Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 260 (5th Cir. 1995) ("Because there is [no contract] between the Cavallinis and [the insurance agent], there is no basis under Texas law for imposing upon him a duty of good faith and fair dealing, and thus no possibility that he could be found liable for breach of that duty."). Because ISI, as an insurance agent, owed Plaintiff and her husband no duty of good faith and fair dealing, her claim against ISI fails.

Plaintiff's claim against FSA also fails, because she has pleaded no facts to suggest that FSA had a contractual obligation to her or Mr. Stephenson or that FSA had any involvement with the investigation or approval of her insurance claim. Instead, Plaintiff has alleged that FSA is the policyholder; and, as explained above, she has alleged no facts to suggest that FSA was acting as anything more than a conduit for Mr. Stephenson's premium payments to Standard. In short,

Plaintiff has not alleged any facts to suggest that FSA had any obligation to provide insurance benefits separate from those that Standard was obligated to provide.  In the absence of such a contractual obligation, FSA simply cannot be liable for breach of the duty of good faith and fair dealing, because it owed Plaintiff and Mr. Stephenson no such duty.  See Natividad, 875 S.W.2d at 698. Accordingly, Plaintiff's claims against FSA and ISI for breach of the duty of good faith and fair dealing fail.

### c.  Violations of the Texas Insurance Code

Plaintiff's third cause of action, brought against all Defendants, is one for violations of § 541.151 of the Texas Insurance Code.  (Petition ¶ 22.)  That section provides that

> [a] person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:
> (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or
> (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

Tex. Ins. Code § 541.151 (emphasis added).

Subchapter B prohibits (1) misrepresenting the terms, benefits, or dividends of a policy; (2) misrepresenting the dividends or share of surplus previously paid on a similar policy; (3) misrepresenting the financial condition of

an insurer or the legal reserve system on which a life insurer operates; (4) using a name or title of a policy or class of policies that misrepresents the true nature of the policy or class or policies; and (5) making a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy.  Tex. Ins. Code § 541.051.

Section 17.46(b) of the Business & Commerce Code, in turn, prohibits a laundry-list of "false, misleading, or deceptive acts or practices," including passing off goods or services as those of another; causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; and representing that goods or services are of a particular standard, quality, or grade if they are of another.  Tex. Bus. & Commerce Code § 17.46(b).

Plaintiff alleges that

Defendants have each made, issued, circulated, or caused to be made, issued, or circulated misrepresentations and omissions, including, but not limited to (1) Standard's ability to issue a group insurance policy to FSA; (2) FSA's ability to serve as an eligible group policyholder; (3) the character of the insurance policies as group policies as opposed to individual policies; (4) the statutorily permitted terms of the policies; (5) the lawful scope of coverage of the policies; (6) ISI's ability to act as a "program administrator" of the policies; (7) ISI's failure to have an appointment as agent or adjuster on behalf of Standard or FSA; and (8) SACU's marketing and offering an unlawful insurance policy to its members.

(Id. ¶ 23.)  Plaintiff also asserts that

Defendants have each engaged in unfair settlement practices by: (1) misrepresenting to Mr. Stephenson and Mrs. Stephenson a material fact or policy provision relating to coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim once liability had become reasonably clear; (3) not promptly giving a reasonable explanation, based on the policy, for the denial of the claim; (4) not within a reasonable time either affirming or denying a claim, or submitting a reservation of rights; and (5) refusing to pay a claim without conducting a reasonable investigation.

(Id. ¶ 24.)

Finally, Plaintiff asserts that

Defendants each: (1) passed off services as those of another; (2) caused confusion and misunderstanding as to the source, sponsorship, approval, or certification of services; (3) caused confusion and misunderstanding as to affiliation, connection, or association with, or certification by, another; (4) represented that services had sponsorship, approval, characteristics, and/or benefits that they did not have; (5) represented they had sponsorship, approval, status, affiliation, or connection that they did not have;  (6) represent[ed] that services are of a particular standard, quality, or grade when they were of another; (7) advertising services with no intent to sell them as advertised; (8) representing an agreement confers or involves rights, remedies, or obligations that it does not have; (9) representing an agreement confers or involves rights, remedies, or obligations that are prohibited by law; and (10) failing to disclose information concerning services that was known at the time of the transaction, and such failure to disclose was intended to induce Mr. Stephenson and Mrs. Stephenson into a transaction into which they would not have entered had the information been disclosed.

(Id. ¶ 25.)

Construing the Petition liberally, Plaintiff's allegations that "Defendants" engaged in unfair settlement practices (id. ¶ 24) may be sufficient to state a claim against Standard (again, this question is not before the Court), since—for the reasons given above—Plaintiff has pleaded sufficient facts to suggest that

27

Standard was contractually obligated to provide insurance benefits to Plaintiff for covered losses, that coverage was reasonably clear in this instance, and that Standard nevertheless denied her claim.  However, for the reasons already given, Plaintiff has not pleaded any facts to suggest that the Association Defendants had any involvement with the settlement process or any authority to decide Plaintiff's claim for benefits.  Accordingly, while Plaintiff may state a claim for unfair settlement practices against Standard, she fails to state such a claim against any of the Association Defendants.

The remaining allegations are insufficient to state a claim against any of the Defendants, because they are both inappropriately collective and wholly conclusory.  First, Plaintiff globally alleges that "Defendants" each committed the laundry-list violations listed above, making it difficult, if not impossible, to determine when and how each Defendant allegedly violated the Texas Insurance Code.  See Griggs, 181 F.3d at 698 (holding that referring collectively to "Defendants" without attributing conduct to specific parties could not even meet the liberal requirements of notice pleading); Holmes v. Acceptance Cas. Ins. Co., --- F. Supp. 2d ---, 2013 WL 1819693, at *6 (E.D. Tex. Apr. 29, 2013) (finding, in part because "all of [plaintiff's] factual allegations [were] grouped indiscernibly against 'Defendants,'" that the allegations were "conclusory and fail[ed] to allege any specific conduct that could support a claim for relief under

the Texas Insurance Code or the DTPA").  "[M]erely lumping diverse and

non-diverse defendants together in undifferentiated liability averments of a petition

does not satisfy the requirement to state <u>specific actionable conduct</u> against the

non-diverse defendant."  <u>King v. Provident Life and Accident Ins. Co.</u>, No.

1:09-CV-983, 2010 WL 2730890, at *3 (E.D. Tex. June 4, 2010); <u>see also</u> <u>First</u>

<u>Baptist Church of Mauriceville, Tex. v. GuideOne Mut. Ins. Co.</u>, No.

1:07-CV-988, 2008 WL 4533729, at *4 (E.D. Tex. Sept. 29, 2008) ("[C]onclusory

allegations that '[d]efendants'' conduct violated the code without elaboration on

what a given defendant supposedly said or did also fail.").

        Second, Plaintiff has failed to plead facts plausibly showing that any

of the Defendants made any misrepresentations or otherwise engaged in conduct

falling within the laundry list of violations contained in the Texas Insurance Code.

"Plaintiffs must put defendants on fair notice of the allegations against them, not

require defendants to 'glean' the factual basis of such allegations from a list of

ambiguous legal conclusions."  <u>Taj Props., LLC v. Zurich Am. Ins. Co.</u>, No.

H-10-2512, 2010 WL 4923473, at *4 (S.D. Tex. Nov. 29, 2010).  Here, there is no

allegation that Plaintiff or her husband ever had any contact with any of the

Defendants.  There is no allegation that Plaintiff or her deceased husband ever met

or spoke with anyone at Standard, ISI, FSA, or SACU—much less any explanation

regarding when any misrepresentations were made, what was said, or how Plaintiff

and her husband relied on or were harmed by the communications.  Instead, the

block quotations from Plaintiff's Petition are prime examples of the kind of

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," that are insufficient under <u>Twombly</u> and <u>Iqbal</u>.  <u>Iqbal</u>, 556

U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).  As the court explained in <u>First</u>

<u>Baptist Church of Mauriceville</u>,

> a controlling state court petition that successfully alleges a recognized cause
> of action but fails to also allege facts giving notice of how the defendant's
> conduct gives rise to the asserted liability lacks the required specificity.
> Identifying only what law forms the basis of the complaint, without
> identifying how a defendant violated that law, <u>proves only that there is a</u>
> <u>theoretical possibility that a cause of action could be stated against the</u>
> <u>defendant</u>, not that the plaintiff did state a cause of action.

2008 WL 4533729, at *4 (emphasis added); <u>accord</u> <u>Killion v. Allstate Texas</u>

<u>Lloyds</u>, No. CA-C-03-442-H, 2004 WL 612843, at *5 (S.D. Tex. Feb. 25, 2004)

("'[A] near-verbatim recitation of portions of [unfair settlement practices specified

in the Texas Insurance Code]' does not create a colorable claim . . . unless coupled

with facts indicating the [defendant's] individual role in the alleged events.")

(quoting <u>Bailey v. State Farm Lloyds</u>, No. Civ. A. H-00-3638, 2001 WL

34106907, at *4 (S.D. Tex. Apr. 12, 2001)).

    In the absence of sufficient factual allegations—and especially in light

of the fact that any alleged misrepresentations seem likely to be based on

Plaintiff's meritless FSA-is-an-unauthorized-insurer theory (discussed in more

detail below)—Plaintiff fails to state a claim against the Association Defendants
under § 541.151 of the Texas Insurance Code.

### d. Violations of the Deceptive Trade Practices Act

Plaintiff's fourth cause of action, brought against all Defendants, is for
violations of § 17.50 of the Texas Deceptive Trade Practices Act ("DTPA").
Plaintiff alleges that

> Defendants committed the following actionable violations: (1) those
> violations identified in paragraph 25, which Mr. Stephenson and Mrs.
> Stephenson relied upon to their detriment; (2) engaging in unconscionable
> action and/or course of action that took advantage of Mr. Stephenson's and
> Mrs. Stephenson's lack of knowledge, ability, experience, or capacity to a
> grossly unfair degree; and (3) the use or employment of an act or practice in
> violation of Tex. Ins. Code Chapter 541, as outline[d] above.

(Petition ¶ 27).  In other words, Plaintiff's claim under the DTPA is based on and
incorporates by reference the same allegations made in support of Plaintiff's Texas
Insurance Code claims.  For precisely the same reasons give above—namely, that
Plaintiff has not pleaded sufficient factual allegations to put the Association
Defendants on notice of the charges against them—Plaintiff fails to state a claim
for intentional misrepresentations in violation of the DTPA.

### e. Violations of Texas Insurance Code § 542

Plaintiff's fifth cause of action alleges that Standard and FSA violated
§ 542 of the Texas Insurance Code—known as the Prompt Payment Statute—when
they failed to timely accept or reject Plaintiff's claim.  (Petition ¶ 29.)  Section

542.056 provides that "an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." Tex. Ins. Code § 542.056(a) (emphasis added). That section also provides that "[i]f the insurer rejects the claim, the notice required by Subsection (a) . . . must state the reasons for the rejection"; and "[i]f the insurer is unable to accept or reject the claim within the period specified by Subsection (a) . . . the insurer, within that same period, shall notify the claimant of the reasons that the insurer needs additional time" and "shall accept or reject the claim not later than the 45th day after the date the insurer notifies a claimant under this subsection." Id. § 542.056(c), (d) (emphases added).

Plaintiff alleges that she "gave proper notice of the claim to Standard" and that Standard "failed to comply with the foregoing provisions." (Petition ¶ 29.) Accordingly, Plaintiff may have stated a claim against Standard, which has acknowledged that it was Mr. Stephenson's insurer. However, Plaintiff fails to state a claim against FSA, because she has pleaded no facts to suggest that FSA was an insurer or had any involvement with the approval or denial of Plaintiff's claim.

The plain language of § 542.056 makes clear that it applies only to "insurers." The Texas Insurance Code contains two definitions of the term

"insurer," neither of which appears to cover any of the Association Defendants.
First, Texas Insurance Code § 801.001(2) states that an insurer is "the issuer of an
insurance policy that is issued to another in consideration of a premium and that
insures against a loss that may be insured against under the law."  The plain
language of the Policies (which Plaintiff attached to her state-court petition) makes
clear that Standard alone issued them and that Standard is responsible for insuring
beneficiaries against loss.  Plaintiff does not allege that FSA issued her a policy or
that she or Mr. Stephenson paid FSA premiums (aside from those premiums that
FSA passed through to Standard).  Accordingly, the allegations in the Petition give
no support to the contention that FSA qualifies as an insurer under § 801.001(2).

The Texas Insurance Code also defines "insurer" as "(A) a
corporation, association, partnership, or individual engaged <u>as a principal</u> in the
business of insurance; (B) an interinsurance exchange or mutual benefit society; or
(C) an insurance exchange or syndicate."  Tex. Ins. Code § 101.002(1) (emphasis
added).  Plaintiff does not argue that FSA qualifies as an interinsurance exchange,
mutual benefit society, insurance exchange, or insurance syndicate, and it does not
appear to the Court that FSA is any of those things.  Accordingly, while Plaintiff
does not explicitly argue as such, the Court will assume that she is alleging that
FSA was "engaged as a principal in the business of insurance."
<u>Id.</u> § 101.002(1)(A).

While the term "principal" is not defined in Chapter 101, general principles of statutory interpretation dictate that it should be given its common meaning.  <u>See</u> Tex. Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Black's Law Dictionary defines "principal" as "[o]ne who authorizes another to act on his or her behalf as an agent."  Black's Law Dictionary 1230 (8th ed. 2004). Another principle of statutory construction is that "the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius."  <u>R.R. Comm'n of Tex. v. McKnight</u>, 619 S.W.2d 255, 260 (Tex. Civ. App. 1981). Because the statute specifies that an insurer must be "a <u>principal</u> in the business of insurance," it implies that agents and insureds are <u>not</u> included in the definition.

Because Standard actually issued the Policies, and because Standard has the authority to investigate and make a final determination on any claims under the Policies, it clearly qualifies as a principal in the business of insurance.  Plaintiff herself states that Standard is an authorized insurer and that it "issued" the Policies. (Petition ¶¶ 9, 11–12.)  On the other hand, Plaintiff's allegations and the language of the Policy indicate that FSA did none of those things.  FSA was merely the group policyholder—one of Standard's customers.  (<u>Id.</u> ¶ 10.)  Again, there is simply nothing in Plaintiff's Petition to suggest that FSA qualifies as an insurer—

and, accordingly, nothing to support her contention that FSA is liable under

§ 542.056 for failing to timely accept or reject Plaintiff's claim.

f.   <u>Violations of Texas Insurance Code § 101.201</u>

Plaintiff's sixth cause of action asserts that all "Defendants" violated

Texas Insurance Code § 101.201.  (Petition ¶ 31.)  That section provides that an

"insurance contract effective in this state and entered into by an unauthorized

insurer is unenforceable by the insurer" and provides a cause of action to collect

the full amount of the unpaid insurance claim from any entities who assisted in the

sale of the policy.  Tex. Ins. Code § 101.201.

Again, Plaintiff admits that Standard is the insurer for the policies at

issue, that Standard is authorized to issue insurance in Texas, and that Standard did

issue the Policy at issue in this case.  (Petition ¶¶ 9, 10–11.)   However, she argues

that FSA also "acted as" an insurer and is therefore an "unauthorized insurer"

within the meaning of the statute.  (<u>Id.</u> ¶ 31.)  "FSA acted as an insurer by

unlawfully acting as a group policyholder," argues Plaintiff.  (<u>Id.</u>)  "Defendants

assisted FSA directly or indirectly in the procurement of [the Policy], and FSA has

failed to pay the claim.  Therefore, Defendants are jointly and severally liable to

Mrs. Stephenson for the full amount of the claim."  (<u>Id.</u>)

Plaintiff's argument is without merit.  Again, FSA does not qualify as

an insurer under either of the two definitions in the Texas Insurance Code.  It

neither issued the policies nor sought to enforce them.  The Petition and the language of the policies (which Plaintiff attached to her Petition) confirm that the only insurer of the policies was Standard; FSA was merely the policyholder. While FSA did collect premiums from Mr. Stephenson, it acted only as a conduit, passing those premiums along to Standard.

Plaintiff does not cite any authority for the proposition that FSA was not an "eligible group policyholder."  (Petition ¶ 31.)  Indeed, while Defendants did not specifically address the question, it appears to the Court that FSA is eligible to hold a group policy under Texas Insurance Code § 1131.060 or § 1131.064. (See doc. # 1-1 (Declaration of Paul Clampitt).)   Even assuming that FSA was not an eligible group policyholder, however, Plaintiff does not cite any authority in support of her argument that that would somehow transform FSA into an "insurer" under the law.  Instead, Plaintiff provides only unsupported legal conclusions— "FSA acted as an insurer by unlawfully acting as a group policyholder" (Petition ¶ 31)—precisely the kinds of conclusory assertions that the Court need not assume to be true for purposes of a motion to dismiss.  At the hearing, Plaintiff's counsel appeared to concede that there was no statutory authority or case law to support the contention that an organization that is ineligible to be a group policyholder is somehow transformed under the law into an "unauthorized insurer," saying, in effect, that he did simply not know how else to categorize FSA.

In the absence of allegations supporting the conclusion that FSA was an unauthorized insurer, Plaintiff cannot support a claim against any of the other Association Defendants for assisting FSA in the sale of an unauthorized policy. Accordingly, Plaintiff has failed to state a claim against the Association Defendants under § 101.201.

*      *      *

For the foregoing reasons, Plaintiff has failed to state a claim against the Association Defendants under any of the theories in the state-court Petition. Indeed, Plaintiff has given the Court no reason to conclude that this case presents anything more than run-of-the-mill claims stemming from an allegedly wrongful denial of insurance benefits—nor reason to conclude that any of the Association Defendants would be jointly and severally liable for any damages. Accordingly, Plaintiff has not met her burden of demonstrating that a non-diverse defendant is one (a) from whom significant relief is sought and (b) whose alleged conduct forms a significant basis for the claims asserted. The local controversy exception does not apply.

6. <u>Plaintiff's Disavowal of Her Class Claims Does Not Divest This Court of Jurisdiction</u>

Strangely—although Section VIII of the Petition bears the heading "Class Allegations" and contains five paragraphs over two pages that define a

purported class, and although Plaintiff expressly invoked Texas Rule of Civil

Procedure 42, the Texas equivalent of Federal Rule of Civil Procedure 23—

Plaintiff now claims that "[t]his lawsuit was not filed as a class action."

(Doc. # 22 ¶ 18.)  Instead, Plaintiff claims—based primarily on the fact that she did

not check the "Class Action" box on the Civil Case Information Sheet—that she

"filed this suit as a Consumer/DTPA case . . . without an election to proceed as a

putative class action . . . ."  (Id. ¶ 20.)

       The Court understands Plaintiff's arguments in her Reply to be at best

a post-hoc disavowal of the Class Claims she asserted in the Petition and at worst a

bald-faced attempt to avoid federal jurisdiction under the Class Action Fairness

Act by mischaracterizing what quite clearly are class claims.  Plaintiff's

subsequent disavowal of her class claims does not affect the Court's jurisdiction,

however: "The basis for federal jurisdiction under CAFA is established at the time

of removal, and 'once a federal court properly has jurisdiction over a case removed

to federal court, subsequent events generally cannot "oust" the federal court of

jurisdiction.'"  Brinston v. Koppers Indus., Inc., 538 F. Supp. 2d 969, 975 (W.D.

Tex. 2008) (citing Braud v. Transp. Serv. Co., 445 F.3d 801, 808 (5th Cir. 2006)).

Plaintiff did not argue that the claims she labeled "Class Claims" in her petition

were not class claims until after the case was removed to federal court, so that

argument has no bearing on whether removal was proper.  See Garcia v. Boyar &

<u>Miller, P.C.</u>, Cv. Nos. 3:06-CV-1936-D, 3:06-CV-1937-D, 3:06-CV-1938-D, 3:06-CV-1939-D, 3:06-CV-2177-D, 3:06-CV-2206-D; 3:06-CV-2236-D, 3:06-CV-2241-D, 2007 WL 1556961, at *5 (N.D. Tex. May 30, 2007) ("According to the plain text of the statute, CAFA removal extends to a putative class action before it is certified. Accordingly, to the extent plaintiffs seek a remand based on withdrawal of their request for class certification, the court declines to grant their motions on this basis.").

For the reasons given, Defendants have established that, on the face of the state-court petition, removal was proper under CAFA, and this Court's jurisdiction may not be divested by subsequent events.  Accordingly, Plaintiff's Motion to Remand is denied.

B.  <u>Diversity Jurisdiction</u>

Defendants asserted in their Notice of Removal that federal jurisdiction was also proper pursuant to 28 U.S.C. § 1332(a).  (<u>See</u> doc. # 1 at 5.) While complete diversity does not exist on the face of Plaintiff's state-court petition, Standard insists that the Court "may disregard the citizenship of the Association Defendants, as they have been improperly joined by Stephenson to defeat diversity jurisdiction and prevent removal to this Court."  (<u>Id.</u> at 6 (citing <u>Travis v. Irby</u>, 326 F.3d 644, 647 (5th Cir. 2003)).)  However, because the Court

has determined that federal jurisdiction is proper under CAFA, it need not and does not address Defendants' alternative basis for federal jurisdiction.

II.    Defendants' Motions to Dismiss

       For the reasons given in the Court's discussion of federal jurisdiction under CAFA (Part I.A., supra), Plaintiff has failed to state an individual or class claim against any of the Association Defendants.  Accordingly, the Court concludes that the Association Defendants' Motions to Dismiss (docs. ## 7, 8) should be granted.  For the reasons that follow, however, the Court will allow Plaintiff an opportunity to amend some of her claims.

III.   Leave to Amend

       Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."  Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).  Following the Supreme Court's guidance, the Fifth Circuit uses five factors to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.  Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)

(citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Absent any of these factors,

leave should be "freely given."  <u>Foman</u>, 371 U.S. at 182.

       The first four <u>Foman</u> factors do not appear to apply in this instance.

However, the fifth factor—futility of amendment—counsels against permitting

Plaintiff an opportunity to amend some of her claims.  It would be futile for

Plaintiff to amend the claims she brought against FSA for breach of contract and

for violations of the Texas Prompt Payment Statute or her claims against FSA and

ISI for breach of the duty of good faith and fair dealing, since—for the reasons

given above—Standard is the only Defendant that had a contractual obligation to

pay Plaintiff benefits or that had any control over processing her claim.

       It would also be futile to permit Plaintiff to amend her claim under

§ 101.201 of the Texas Insurance Code since Plaintiff concedes that Standard

issued the Policy and that Standard is authorized to issue insurance in the State of

Texas.  At the hearing, Plaintiff's counsel even conceded that there was no

statutory authority or case law to support the contention that FSA, if indeed

ineligible to be a group policyholder, should be considered an "unauthorized

insurer."  Because Plaintiff's own allegations and the plain language of the Policy

make clear that Standard—an authorized insurer—issued the Policy, Plaintiff

cannot state a claim under Texas Insurance Code § 101.201.  Accordingly, this

claim is dismissed with prejudice as to all the Association Defendants.

On the other hand, the allegations supporting Plaintiff's claims under Texas Insurance Code § 541 and DTPA § 17.50 are so vague that it is difficult to know precisely what the factual basis for them is, and the Court cannot be certain that it would be futile for Plaintiff to amend them.  If given an opportunity to provide more factual allegations, Plaintiff may be able to state a claim against some or all of the Association Defendants under Texas Insurance Code § 541 or DTPA § 17.50.  Especially in light of the fact that Plaintiff's state-court Petition was removed to federal court, where it was subject to different pleading standards than it would have faced in Texas state court, the Court concludes that it is appropriate to dismiss these claims without prejudice.

<u>CONCLUSION</u>

For the reasons given, the Court **DENIES** Plaintiff's Motion to Remand (doc. # 14), **GRANTS** San Antonio Federal Credit Union's Motion to Dismiss (doc. # 7), and **GRANTS** the Motion to Dismiss filed by Financial Solutions Associations and Institution Solutions I (doc. # 8).

**IT IS FURTHER ORDERED** that Plaintiff may, within thirty (30) days of the filing of this Order, file an amended complaint.  Failure to do so and to cure the pleading deficiencies will result in dismissal with prejudice of the claims dismissed without prejudice by this Order.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, June 18, 2013.

_____
David Alan Ezra
Senior United States District Judge